## MEYERS *v.* DAVIS.

PLEADING AND PRACTICE; AMENDMENT; APPEALABLE ORDERS; AFFIDAVITS OF DEFENSE.

1. The allowance or refusal of leave to amend is discretionary with the trial court and its action is not reviewable on appeal, especially when the motion for leave to amend is made after judgment.

2. Ordinarily, the refusal of a trial court to vacate a judgment is not appealable, especially when the only ground for such a motion is that the defendant may have leave to amend an affidavit of defense and to have a trial by jury.

3. Where, in an action on a promissory note against maker and endorser, the defendants sever in their defenses, an affidavit of defense made by one will not inure to the benefit of the other; *distinguishing* Tyrer *v.* Chew, 7 App. D. C. 175.

4. Whether, under Rule 73 of the Supreme Court of this District, which requires an affidavit of defense to be filed " with the pleas," it is a sufficient compliance with the rule to file such an affidavit two days after filing pleas, where there is no intervening action by the plaintiff, *quære*.

5. If, after the filing of pleas, under such circumstances, and before the filing of an affidavit by the defendant, the plaintiff moves for judgment for want of an affidavit of defense, the right of the defendant, if any, to file his omitted affidavit is lost.

6. In a plaintiff's affidavit under the Seventy-third Rule, it is only necessary that such a case be made out as would, in a trial before a jury, in the absence of countervailing evidence, entitle the plaintiff to verdict and judgment; and it is no proper objection that such an affidavit does not anticipate a defense and explain matters only to be set up in defense.

7. An affidavit of defense under the Seventy-third Rule must be construed liberally and every intendment made in favor of the

defendant, but to avail him it must contain some legitimate element of defense.

8. Such an affidavit made by the endorser, in a suit on a promissory note against maker and endorser, wherein the endorser claimed that in another transaction having no connection with the note in suit, but in which the plaintiff was one of two trustees, the trustees in an accounting to the maker, had given him too small a credit, *held* insufficient.

No. 829. Submitted October 19, 1898. Decided November 1, 1898.

HEARING on an appeal by the defendant from a judgment under the Seventy-third Rule in an action on a promissory note. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Leo Simmons* for the appellant.

*Mr. T. Percy Myers* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

On March 9, 1898, suit was instituted in the Supreme Court of the District of Columbia by the appellee, Lewis J. Davis, as plaintiff, to recover the amount of a promissory note for six hundred dollars, with interest at the rate of six *per centum per annum*, executed on March 30, 1897, by the appellant, John G. Meyers, to the order of Augustus Burgdorf, who, on the same day, endorsed the same to the plaintiff, and who, under the statute allowing such joinder, was made a codefendant with Meyers in the suit. The note was payable two months after date; but it was not paid at maturity, and it seems to have been duly protested. But on June 25, 1897, Burgdorf paid $300 on account of it; and on January 15, 1898, Meyers paid $50 on account; both of which sums being credited on the note, and the suit being for the balance remaining due, with interest. The suit was supported by affidavit.

Service of process was had on both defendants, as it would seem, on the day of the institution of the suit; and, under

the rules of the court, twenty days after the day of service, excluding Sundays and legal holidays, were allowed to the defendants to plead. This period would seem to have expired on and with the first day of April, 1898.

On March 30, 1898, the defendant, John G. Meyers, filed pleas of the general issue. Thereupon, on the same day, the plaintiff moved for judgment under the Seventy-third Rule of the court, for failure on the part of this defendant to file an affidavit of defense; and noticed his motion for hearing on April 8. On April 1, the defendant Meyers filed another paper containing the same identical pleas which he had already filed, and appended an affidavit to them.

On April 4, 1898, the defendant, Burgdorf, filed a plea of the general issue to the plaintiff's declaration, and supported his plea by an affidavit. The record discloses no further proceedings in regard to Burgdorf; and he is not a party to this appeal.

On April 19, 1898, the plaintiff moved the court to strike from the records the affidavit of defense filed by Meyers on April 1, on the ground that it was not filed on March 30, as claimed to have been required by the Seventy-third Rule. And with this motion he joined another, for judgment against Meyers under the Seventy-third Rule for want of affidavit. And this motion was noticed for April 22, but seems not to have been disposed of before May 16. On this last day it was adjudged by the court that the plaintiff's motion for judgment under the Seventy-third Rule should be granted; and thereupon judgment was entered in favor of the plaintiff against Meyers for the amount of his claim.

Thereupon the defendant Meyers moved to vacate this judgment, and that he be granted leave to amend his affidavit of defense, in order, as he says, that he may have a trial by jury. And with this motion, and without awaiting the leave requested, he put upon the files another affidavit.

of defense substantially the same as that previously filed by Burgdorf. The court denied this motion, refused to vacate the judgment, and refused leave to amend.

The defendant Meyers then appealed to this court, and here he advances five assignments of error: (1) That it was error to consider the plaintiff's second motion, without having first disposed of the first motion; (2) That it was error to sustain the plaintiff's motion for judgment for want of an affidavit; (3) That it was error to grant judgment against the defendant; (4) That it was error to overrule the defendant's motion to vacate the judgment; (5) That it was error to refuse leave to the defendant to amend his affidavit of defense.

The fifth assignment, of course, we can not consider. It is elementary law that the granting of leave to amend is discretionary with the court, and that neither the allowance nor the refusal of such leave is the proper subject of appeal to an appellate tribunal. Least of all is it proper basis for a writ of error or appeal, when the motion for leave is made after judgment rendered. The motion, then, comes too late.

Nor ordinarily can a writ of error or appeal well be based upon the refusal of a trial court to vacate a judgment, especially when the only ground for such a motion is that the defendant might have leave to amend an affidavit of defense and to have a trial by jury. These are not good grounds upon which to vacate a judgment duly and properly rendered.

Likewise, it is not competent for us to consider the pleas and affidavit of Burgdorf at this juncture. The parties have severed in their defense, as they were entitled to do; and circumstances that might discharge the one from liability might have no effect on the liability of the other. They held the different positions of maker and endorser; and it might well be that one would be released from liability and the other held. This is not a case of merely joint liability, where the parties are sued jointly and plead jointly the

same defense, such as we had in the case of *Tyrer* v. *Chew*, 7 App. D. C. 175, where we held that an affidavit of defense made by one of the defendants would inure to the benefit of all of them.

The only record that we can consider on this appeal consists of the plaintiff's declaration and affidavit ; the pleas of the appellant filed on March 30; the pleas and affidavit of the appellant filed on April 1 ; the several motions of the plaintiff for judgment; and the ruling of the court thereon. And upon this record we are of the opinion that no sufficient ground has been shown for the reversal of the judgment rendered against the appellant.

1. It was, of course, an irregularity on the part of the appellant to file two sets of pleas, as he did, whether the pleas were in substance identical or different; and it is entirely proper to eliminate the second set of pleas from the record. The case, therefore, may be considered as though the appellant had filed his pleas on March 30, and his affidavit in support of them on April 1, two days afterwards. Then, assuming that there was no intervening action by the plaintiff, the question might arise whether this was a sufficient compliance with the rule which required the affidavit to be filed "*with the pleas.*" This question we need not answer here, for the reason that there was intervening action by the plaintiff in the way of a motion for judgment, which action the plaintiff was at the time entitled to take. We may say, however, that such a practice, if there was a practice of the kind, of thus separating the affidavit from the pleas, for obvious reasons should be condemned as leading to confusion and mistake.

In the case of *Banville* v. *Sullivan*, 11 App. D. C. 23, we recognized the general rule that "parties may waive limitations of time, either by express consent or by implication, through failure to take advantage of default." Consequently, a party may plead after a time limited, if no action has in the meantime been taken by the opposing party.

Much more, it would seem, could he, within the time limited, supply any deficiency in a pleading already interposed, which would not require any alteration or mutilation of the record as already made. But a very different case is presented when action has been taken by the other side for default. Then the right of the party to add to his pleading an omitted affidavit must necessarily cease and be deter_ mined, even though he still be within the original period of limitation. For, by the filing and service of his pleas, he has called upon his opponent to take action in reply; and the time of the opponent for taking action begins to run from the notice to him of the filing of the pleas. It would be manifestly unjust and it would lead to endless confusion if the party could thereafter, without leave of the court, add to his pleadings a document that would entirely change their character or effect. If, therefore, the judgment appealed from was based upon the plaintiff's first motion for judgment, and upon the position that there was then no affidavit whatever of defense, we do not see that there is any good ground for our interference with the court's interpretation and application of its own rule.

2. But if, on the other hand, the first motion of the plaintiff for judgment must be regarded as having been abandoned or superseded by his second motion, made when the appellant's affidavit was already on the record, and the judgment appealed from should be regarded as based upon the insufficiency of that affidavit, we yet find no ground for disturbing that judgment; for the affidavit is plainly insufficient.

Both affidavits are open for consideration upon the motion for judgment. But no infirmity is shown in the plaintiff's affidavit. A *prima facie* case is there made out, proof of which on trial before a jury would, in the absence of countervailing evidence, entitle the plaintiff to verdict and judgment. And this is all that is required. Nor is it any objection that it does not anticipate a defense and ex-

plain matters only to be set up in defense. But we presume that here it was upon the weakness and insufficiency of the defendant's affidavit that the determination of the case was made to depend, the plaintiff's affidavit having been properly accepted as sufficient.

The rule must be recognized which requires every intendment to be made at this point in favor of the defendant, and that his affidavit should be construed with all reasonable liberality in his favor, notwithstanding that it was the interposition of sham defenses which the rule was made to prevent, and for the prevention of which it should, as far as possible, be enforced. But, construing the defendant's affidavit with all reasonable liberality in his favor, we find in it no legitimate element of defense. It admits the execution and delivery of the note in suit in due course of business; and it admits that, long after its maturity, when all the points now set up in defense must or could have been known to the defendants, both of them recognized and affirmed the validity of the note and their liability upon it, one of them by the payment of $300, and the other by the payment of $50, on account of it. It is of no consequence that the note was executed by the appellant for the accommodation of his codefendant Burgdorf, and that he received no consideration for it, if such was the fact. Nor is it of any consequence that Burgdorf gave it to the plaintiff merely as collateral security for his own note for the same amount due at the same time; for it is conceded by the appellant that it was executed and delivered by him to Burgdorf for the precise purpose for which it was used, that of raising money upon it from the plaintiff. The whole defense is, that in another and wholly different transaction, having no connection whatever with this note, but in which the plaintiff was one of two trustees, the trustees, in an accounting of the transaction to Burgdorf, had given him credit only for $300, when, as it is claimed, he should have had credit for $600; and the inference is sought to be

created, although it is nowhere averred in the affidavit, that
the plaintiff had undertaken, out of the proceeds of the
Burgdorf note, to pay this sum of $600, and had not done
so.    But even if this were the fact, and if it were true that
the plaintiff, as trustee, had the money of Burgdorf raised
upon the note placed in his hands for application to this
other transaction, it is not apparent how this could consti-
tute a valid defense for this appellant upon this note.    If
Davis, trustee, failed to make the proper application of the
money paid to him, it was his principals, and not the de-
fendants, who were injured, except, of course, that Burgdorf,
in a proper proceeding, might enforce the due application
of the money.    But the money, when received by him, be-
came the money of the parties for whom he was trustee,
and it is not apparent upon what principle of law or justice
it could still be considered as the money of Burgdorf, to be
made an offset in this suit, or as a ground upon which to
preclude recovery by the plaintiff.

But the affidavit failed to allege that any money what-
ever went into the hands of Davis, as trustee, or was received
by the plaintiff for any such purpose as indicated.    The
allegation of the affidavit is that "the said Burgdorf there-
upon gave his note to the plaintiff for the sum of $600, and
deposited the note made by this defendant with the plaintiff
as collateral security for the same, with the understanding
that the note of said Burgdorf, when paid, was to be applied
to a certain interest due on a note secured by deed of trust
to L. J. Davis and Charles C. Glover; that thereafter the
said Burgdorf paid on account of said note the sum of $300,
and having defaulted in the payment of the notes and in-
terest secured by the deed of trust above mentioned, the
real estate secured thereby was sold, and in the accounting
of said trustees to the said Burgdorf they had given him
credit only for the sum of $300." This is the whole de-
fense; and it is palpably insufficient, if true.    It is no
ground of defense against this note, that certain trustees in

another transaction, of whom this plaintiff was one, failed, whether through mistake or intention, it matters not which, to give all the credit in that transaction to one of the defendants which they should have given. But the allegation on its face is an absurdity, and can not, even on such a hearing as this, with all the intendments in favor of the defendant, be regarded as true.

At the time of the discount of the note, or of its delivery to the plaintiff, either Burgdorf received the proceeds, or he did not. If he received the proceeds, it is an absurdity to say that "the note *when* paid" was to be applied to the payment of any interest; for payment of the note would simply repay to the plaintiff the money lent by him, and there would be no money or credit of Burgdorf in his hands wherewith to make any payment to himself and Glover, trustees, or the principals whom they represented in that transaction. If, on the other hand, no money was advanced by the plaintiff to Burgdorf at the time of the delivery of the note in suit by the latter to the former, and no money was to be paid by Davis, under the alleged understanding with Burgdorf, to the account of the transaction in which he was trustee with Glover, until the maturity of the note and payment thereof by Burgdorf, it is inconceivable that the note should have been given, and interest stipulated thereon for the time for which it was to run, when the money was not at all needed. The allegation is palpably absurd.

It is true, there is another alternative; but that is plainly inconsistent with the specific allegation of the affidavit. It is to the effect that there was an agreement between the plaintiff and the defendant Burgdorf, that, at the time of the discount of the note, the sum of $600 should be advanced by the plaintiff to the credit of Burgdorf, and paid to the account of the trust represented by the plaintiff and Glover, for which advancement the payment of the note would reimburse him. But this alternative we have already consid-

13 App. Ct.—25

ered. If this was the fact, and the plaintiff, as trustee in the transaction referred to, failed to turn the money over to his principals, or failed to state it in the accounting of the trustees with Burgdorf, the latter, if injured by such failure, has his remedy; but the remedy is not in resistance by the defendant Meyers to this note or to the plaintiff's present suit.

Under any aspect, therefore, of the defendant's affidavit, it must be deemed wholly insufficient, and it was properly so regarded by the court below.

It follows that the judgment of the Supreme Court of the District of Columbia in this case must be *affirmed, with costs. And it is so ordered.*